CHANCERY.

Case 44.

January 7.

## Meriweather's Adm'r. *vs* Herran, &c.

### ERROR TO THE LOUISVILLE CHANCERY COURT.

*Chancing bargains.    Choses in action.    Lapse of time.
Evidence.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

Where there is a chancing bargain and there has been no fraud, the parties are bound to comply with its terms.

THE deed from R. C. Meriweather to Robert Buckner, of January, 1820, imports a transfer of every interest of what kind soever, which the former had or could have in the estate of his father, James Meriweather, and its general and comprehensive terms seem to have been adopted for the very purpose of embracing every thing coming or to come from that estate.    It is impossible to confine it by construction, to his interest in land and negroes, or either.    It expressly transfers "all debts, dues, money, property and interest, due or to become due" to him as one of the heirs, &c.    Failing to specify any one debt or species of property or interest coming from the source referred to, it must be understood and was undoubtedly intended to embrace all.    Nor is there any thing in the consideration of the transfer stated to be the purchase of a tract of land from Buckner, which can restrict the extent of the operative words of the instrument.    On the other hand, the instrument shows that there was a consideration, and there is no proof of its value which would lead to the inference that in the condition of the estate at that time, there was gross irregularity or inadequacy in the bargain.    It is true, Meriweather was a young heir, dealing with the estate derived from his father, but still in the hands of others. But Buckner was under no fiduciary or confidential relation either to him or to the estate, and had not, so far as appears, better means of information with regard to its condition, than he himself had.    No overreaching or fraud is shown in the transaction; and we know of no rule which pronounces the transfer even of an infant heir, to be absolutely void under such circumstances.

The contract was evidently a chancing bargain, and there being no fraud, the purchaser was entitled, by its terms, to all that could be made from the sources referred to.

It is contended, that two great sources of gain, were unknown at the time, and in fact arose or became available afterwards, and should, therefore, be excluded from the operation of the instrument. One of these was the recovery in the names and for the benefit of the heirs of James Meriweather, of several thousand dollars, from his administrator and securities, on account of assets of the estate to which the distributees were entitled. But these assets in the hands of the administrator, must be taken to have been contemplated in the transfer, and although their amount may have been unknown, the entire subject was embraced in the terms and object of the contract. The claim against the State of Virginia on account of James Meriweather's revolutionary services in the Virginia State line, was also a subsisting demand due from Virginia in virtue of her promise during the war, to pay to such of her officers as should remain in service till its termination, the amount of their half pay annually, during life. The interest of R. C. Meriweather in this demand, is clearly embraced in the terms of the transfer. If, as seems probable, its existance was not known or thought of at the time, this circumstance tends to prove what is also probable, that even if the existance of the claim or right had been known, the uncertainty with regard to its payment, or even as to its establishment and allowance, would have rendered it of little value in the estimation of those concerned. And it cannot be assumed with any degree of confidence, that if the facts then existing in regard to it had been fully known, the claim would have been considered as adding any thing appreciable to the value of the estate or of the transfer made to Buckner. If before or at the death of James Meriweather, such claims had been, as a matter of course, allowed and paid by the State of Virginia, it cannot be presumed that he or his representative, to whom the general facts of his revolutionary service must have been known, would have

MERIWEATHER'S ADM'R. vs HERRAN, &c.

The fact, a source of gain to one of the contracting parties, was unknown at the time of such a contract or became available afterwards, will not authorize the Chancellor to interfere.

been ignorant of it. The avidity with which, when such claims become actually available, they were searched out by speculators, would have precluded such ignorance, even if the presumed intelligence and sense of interest of the parties themselves should not have led to the discovery in this instance.

In the absence then, of any proof in this record, going to show when, by the legislation of Virginia, such claims became practically available, it may be assumed from the avowed ignorance of Meriweather's heirs that there was such claim, that it was not then practically available, and if known would have been but lightly estimated, as a bare possibility or nominal claim, the realization of which was wholly contingent and improbable. The fact then, that it was not in the actual contemplation of the parties when this transfer was made, cannot be made the basis of excluding it from the operation of the instrument, the terms of which show that it was not made in reference to or in contemplation of particular claims, but that it was intended to embrace all claims due or to become due, and to carry all advantages which might grow out of such claims. We cannot doubt, therefore, that the assignee and not the assignor, was entitled to the benefit of this claim, under the facilities of ascertainment and the certainty of payment consequent upon the subsequent acts of the State of Virginia and of the Congress of the United States. And we think it equally clear that these advantages afterwards attaching to the claim by the subsequent acts of the two governments, cannot so retroact as to affect the validity of the original transfer. Nor was there any thing in the character of this claim which, in point of law or of public policy, rendered it less assignable, or less the subject of sale and transfer than any other chose in action pertaining to the estate of the deceased officer. The question might have been different had the transfer been made by the officer himself, for whose personal benefit the half pay was promised, or by heirs to whom a bounty is given by the public in respect of the services of their ancestor. But whether even in such cases, the claims might not, in the absence of any interdict, express or

implied, by the authority which created them, have been freely alienable, we need not decide.

No such question is presented here. The claim upon the State of Virginia arose from a contract between her officers, executory and contingent in the first instance, but which, on the performance of the designated consideration, became executed on the part of the officer, and absolutely obligatory on the part of the State. And whatever may have been the case during the life of the officer, the claim being unsatisfied at his death, formed a part of his personal estate, a debt due to his administrator, not distinguishable except with regard to the means of enforcing it, from any other debt due to him.

Then we come to the objection that this contract was made by R. C. Meriweather before he had attained the full age of twenty one years. And it is insisted that upon this ground alone, or in conjunction with the others, the contract, at least so far as respects the two claims which have been noticed, or at any rate as to the last of them, should be set aside upon the prayer of his administrator. It is not denied that the infancy of Meriweather is a sufficient ground for avoiding his deed, either by himself or his representative, and any considerable inequality in the terms of the contract, whether discoverable at the time or developed afterwards, might, if any excuse were wanting, sufficiently excuse the resort to this privilege. But there being no fraud in the contract itself, the subsequent developement of those advantages on the one side, which have rendered it unequal, does not create a new right to avoid it on the ground of infancy any more than on the ground of inequality.

The right of avoidance is still the same, founded in the infancy of the party, taking date from the moment of executing the contract, or at any rate, from his arrival at full age, and subject to be defeated or lost by any act of confirmation or waiver, or by such continued acquiescence as may afford an implication of either, or by the failure to assert the right for such a length of time, as in analogy to the statute of limitations, and in view of its purpose of giving repose to society, should ope-

MERIWEATHER'S
ADM'R.
vs
HERRAN, &c.

The claims of officers of the revolution for compensation for services as promised by Virginia, which remained unpaid at the death of the officer, were assets, and assignable as other choses in action.

The Chancellor will not, after the lapse of more than five years after the arrival of the party at full age, entertain his bill or that of his administrator, to avoid a contract for the transfer of personal property or a chose in action upon the ground of infancy alone.

rate according to the principles and practice of a Court of equity to prevent its future assertion. If land passes by the deed of an infant, his right to avoid the deed, would not entitle him to recover it after an acquiescence of more than twenty years from his arrival at age, before any act done in avoidance of the deed. So if a chattel passed, a similar acquiescence for five years would bar his recovery. The bar of his remedy for the thing transferred, is a bar of his right to avoid the transfer. And although in cases of fraud, the bar by time may not commence in a Court of equity until the fraud is or should have been discovered, yet if there be no fraud in the transaction itself, the subsequent developement of unexpected advantages on the one side, does not, as already said, give a new right of avoidance, or a new commencement to the limitation of time within which it must be exercised.

Then, the case is, that R. C. Meriweather having arrived at age in 1821, this suit was not brought, nor any other act of avoidance done until 1844, nearly twenty four years from the time when his disability from infancy was removed. And, as under our statutes of limitation, this period of acquiescence is sufficient, notwithstanding his absence from the State, to bar even an ejectment for land, and any action for the recovery of money or chattels, we are of opinion that the complainant comes too late to avoid the deed of her intestate. His ignorance of the circumstances which occurred after he left the State in 1820 or 1821, does not affect the operation of the statute of limitations, or of the lapse of time. These circumstances might have operated as motives for the exercise of the right of avoidance. They neither gave nor constituted the right itself. And as he must be presumed to have been cognizant of his right to avoid his contract made during infancy, there is no equitable consideration arising from his early and long continued absence, which can rebut the inference of a waiver of the right or repel the absolute effect of lapse of time, in depriving him or his representative of his right to avoid the contract, or to ask the aid of the Chancellor in enforcing an equity which has so long lain dormant.

'This conclusion renders unnecessary any particular statement of the facts relating to the transfer by Robt. Buckner to Herran, and the acts of the latter in recovering and appropriating the claims which have been noticed. It is sufficient that the representative of R. C. Meriweather, is entitled to no relief upon this record. We remark, however, that Robert Buckner states in his answer, and impliedly in his deposition, that he sold to Herran the interest derived from R. C. Meriweather. This is also impliedly admitted by the bill, which questions only the efficacy and extent of the sale to Buckner. The documentary evidence also proves that the interest of R. C. Meriweather was transferred to Herran by Buckner, as his attorney in fact. And although no formal power of attorney is produced, yet as the interest had been transferred to Buckner by valid deed, and was actually in him, Buckner was clearly authorized to sell and transfer it to Herran; and his transfer, though made in the name of R. C. Meriweather, by himself as his attorney, passed, in equity, whatever interest he himself had. No direct effort is made to set aside this transfer from Buckner to Herran, nor is it shown to have been procured by fraud. The statement of Buckner, made thirteen years afterwards, when Herran had realized the full benefit of his purchase, that he himself had neither acquired nor sold the interest of Richard, in the claim upon Virginia, &c., can have no effect upon the construction of the documents of transfer. Nor do we presume that the compromise between Herran and other claimants of a part of the money received from Virginia and the United States, as appearing in this record, would authorize the conclusion that R. C. Meriweather's transfer did not pass his interest in that claim.

Wherefore, the decree is affirmed.

*Lindsey, Thruston and Pope and Harrison* for plaintiff; *Pirtle and Speed* for defendants.

MERIWEATHER'S
ADM'R.
*vs*
HERRAN, &c.

The statements of a vendor after the sale, are not competent evidence against his vendee.